UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| GEORGE SMITH, | ) | CIVIL ACTION NO. 1:16-cv-2157 |
| Plaintiff | ) | |
| | ) | (JONES, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| RICHARD V. SPENCER, | ) | |
| SECRETARY OF NAVY, | ) | |
| Defendant | ) | |

<u>MEMORANDUM ON DISCOVERY MOTIONS</u>
(Docs. 64, 65, 66, 68, 73, 81, 85, 86, and 88)

**I. Introduction**

George Smith, a former civilian employee of the U.S. Navy, brings this lawsuit alleging that his termination from employment was improper and that he was discriminated against on account of his race. He alleges that for eight months, from August 1, 2011 to March 13, 2012 he was subjected to Racial Discrimination, Reprisal and Retaliation for his complaints of discrimination, a Hostile Work Environment, Wrongful Termination, and Defamation of Character.

In response the Navy admits that Mr. Smith is an African-American, who was hired on August 1, 2011 into a Career-Conditional Appointment, subject to a one-year probationary period, as a Contract Specialist, GS-1102-07, in the Contracting Directorate, Contracting Department 21, at the Naval Supply Systems Command Weapons Systems Support (NAVSUP WSS) in Mechanicsburg, Pennsylvania. They acknowledge that he filed an EEOC complaint during his

employment, but dispute whether Smith was discriminated against and subjected to harassment and a hostile work environment based upon race and reprisal for his prior EEO activity.

Against that backdrop we are now called upon to formally rule on a series of pending discovery motions filed by Mr. Smith, who is proceeding *pro se.* A detailed description of both the procedural and discovery history of this case will best explain my decision in these matters.

**II. PROCEDURAL HISTORY**

George Smith, an African American from Texas, was employed by the Department of the Navy as a civilian employee in Mechanicsburg, PA in August of 2011. During his employment he made numerous complaints to management about the treatment he received from his trainers and supervisors. In November of 2011 he filed a complaint with the EEOC. Rather than resolving the matter, he alleges that this complaint to the EEOC resulted in misconduct and retaliation by his supervisors and ultimately led to his wrongful termination on March 13, 2012.

To right these wrongs he filed suit in the Eastern District of Texas on November 23, 2015 (Doc. 1 - Texas Eastern, 2:15-CV-01810). He filed an Amended Complaint (Doc. 2) on December 7, 2015. The Navy responded with a Motion to Dismiss (Doc. 8) on January 26, 2016. Smith filed a Second Amended

Complaint (Doc 12) on February 19, 2017. The Navy filed an Amended Motion to Dismiss (Doc. 15) on March 2, 2016.

Apparently after some discussion in Texas the court there entered an Order transferring the case from the Eastern District of Texas (where Mr. Smith lives) to the Middle District of Pennsylvania (where the events described in his lawsuit occurred and where most of the witnesses work and live). Before effecting the transfer the Court there entered an Order dismissing as moot the Navy's two motions to dismiss (Docs 8 & 15) (*see* Doc 22).

Once the case officially arrived in Pennsylvania the Navy filed an Answer & Affirmative Defenses (Doc 31) on January 13, 2017. Mr. Smith filed a Reply to the Affirmative Defenses (Doc. 34). The discovery problems in this case began to surface at the end of January when Mr. Smith filed a motion (Doc. 32) asking the court to set times for the parties to meet and confer, alleging that the counsel for the Navy was not cooperating in accordance with L.R. 16.3. He also filed a motion (Doc. 33) seeking an extension of time to conduct the required meet and confer and file a response to the Navy's Affirmative Defenses. On January 31, 2017 Judge Schwab filed an Order (Doc. 35) requiring the Navy to respond to Smith's motions and scheduling a telephonic case management conference for the next month. The Navy filed a prompt response (Doc. 36, Brief in Opposition) and Smith filed a Reply Brief (Doc. 37) one day later. On February 3, 2017, Judge Schwab entered

an order (Doc. 38) denying Smith's motions but establishing a set of deadlines for the parties to cooperate in the filing of the required Joint Case Management Plan. The JCM (Doc. 39) was filed on February 15, 2017. Smith filed a Motion to Correct the JCM (Doc. 40) on February 16, 2017. The Navy replied on the same day with a Corrected JCM (Doc. 41). After a telephonic case management conference, a Case Management Order (Doc. 42) was entered on February 17, 2017. Two months later Mr. Smith filed two letters with the court (Docs. 48, 49) seeking permission to file a Motion addressing discovery violations by the Navy.[1] On April 18, 2017, Mr. Smith wrote a letter informing the Court that Defendant had failed to respond to his written interrogatories and requests for admission within 30 days of being served with those requests in accordance with Fed.R.Civ.P. 33, and 36. (Doc. 48). Upon learning that he needed to request a telephone conference in order to obtain permission to file discovery motions, Mr. Smith filed a second letter to the Court on April 20, 2017, requesting a telephone conference. (Doc. 49).

A telephonic discovery conference was held on April 24, 2017 and Judge Schwab extended all case management deadlines in the case by sixty (60) days (Doc. 51). Three weeks later Mr. Smith filed another letter (Doc. 52) requesting

---

[1] Judge Schwab, like most judges in this District, requires as a part of her case management preferences, a letter seeking a discovery telephone conference before a formal motion can be filed on a discovery issue.

another conference with the Court regarding "discovery violations." Judge Schwab ordered the Navy to respond to this letter (Doc. 53). After requesting, and being granted an extension of time, the Navy filed a response. (Doc. 57). The Navy explained that Mr. Smith's requests included confusing compound questions, and that because all of the written interrogatories and requests for admission contained compound questions they exceeded the limits of discovery agreed upon by the parties in the case management plan.[2]

On June 13, 2017 this case was transferred from Judge Schwab to me for all further case management purposes.

### III. Discovery Events since June 13, 2017

On June 28, 2017 I held the first of many telephone conferences with the parties and established a plan for the resolution of future disputes. In July, Mr. Smith filed three motions to compel (Docs. 64, 65, 66) and the Navy filed briefs in opposition (Docs. 75, 76, 77). Mr. Smith has also filed a motion for relief from judgment requesting that we rule on his motions (Doc. 68). He also made frequent telephone inquiries to chambers requesting the status of his motions. On July 31,

---

[2] Fed.R.Civ.P. 33 (Interrogatories) provides that "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 interrogatories, including all discrete subparts.

L.R. 36.1 (Requests for Admission) provides that "Requests for admissions to a party, as a matter of right, shall not exceed twenty five (25) in number. All requests for admissions, including subdivisions of one numbered request for admission, shall be construed as separate requests for admission."

2017, Mr. Smith also filed a Motion for a Protective Order (Doc. 73). On August 8, 2017, the court held another telephone conference with the parties to discuss discovery issues. At that time the parties were instructed to cooperate and resolve their disputes in good faith. They both expressed a commitment to do so.[3] The plaintiff's deposition was pending and the issue of plaintiff's medical records was discussed. The court explained to Mr. Smith that a protective order regarding the confidentiality of those records was in order and instructed the parties to work together to prepare one. If they could not agree they were instructed to each submit a proposed order and the court would select one (baseball arbitration style) for use at the upcoming deposition. Predictably both sides submitted their own confidentiality agreement and after careful review of each, I adopted the Navy's proposed confidentiality agreement for the deposition and instructed my staff to let the parties know which agreement they should use for the plaintiff's deposition.

Then on August 14, 2017, Mr. Smith filed a motion (Doc. 81) to vacate the protective agreement approved by the court. Mr. Smith also filed a motion to strike a portion of Defendant's response to his request for production (Doc. 85). On September 15, 2017, Mr. Smith filed a "Motion to Strike Defendant Intentional Withheld Undisclosed Documents Bates Labeled 000001-00113, Submitted after

---

[3] At that time the parties also agreed that in future discovery disputes they should each contact the court's staff with a brief explanation of the dispute and both parties agreed that I could communicate with each side ex-parte to discuss these differences. My staff and I have done so frequently over the last eight (8) months.

the Close of Fact Discovery Causing Prejudice and Harm" (Doc. 88). Another telephone conference was scheduled and held on October 10, 2017 and these matters were resolved by agreement. However, no formal order was placed on the docket at that time.

The parties have now filed cross motions for summary judgment (Docs. 98, 99) and briefs and those motions are ripe before me for Report and Recommendation. Because I believe that most if not all of the issues raised by the "pending" motions have been resolved I will enter an order denying all pending discovery motions without prejudice to the right of either party to seek one final round of discovery after the cross motions for summary judgment are decided.

**IV. Legal Standards**

Several basic guiding principles inform our resolution of the instant discovery issues. At the outset rulings regarding the proper scope and timing of discovery are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the timing and scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery will be disturbed only upon a

showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

We also note that our broad discretion over discovery matters extends to decisions under Rule 26 relating to the issuance of protective orders limiting and regulating the timing of discovery. Indeed, it is undisputed that: " '[t]he grant and nature of [a protective order] is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion.' Galella v.

Onassis, 487 F.2d 986, 997 (2d Cir.1973) (citation omitted)." Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992).

This discretion is guided, however, by certain basic principles. One of these cardinal principles, governing the exercise of discretion in this field, is that the district court may properly defer or delay discovery while it considers a potentially dispositive pretrial motion, provided the district court concludes that the pretrial motion does not, on its face, appear groundless. See, e.g., James v. York County Police Dep't, 160 F.App'x 126, 136 (3d Cir. 2005); Nolan v. U.S. Dep't of Justice, 973 F.2d 843,849 (10th Cir. 1992); Johnson v. New York Univ. Sch. of Ed., 205 F.R.D. 433, 434 (S.D.N.Y. 2002). Briefly deferring discovery in such a case, while the court determines the threshold issue of whether a complaint has sufficient merit to go forward, recognizes a simple, fundamental truth: Parties who file motions which may present potentially meritorious and complete legal defenses to civil actions should not be put to the time, expense and burden of factual discovery until after these claimed legal defenses are addressed by the court.

In such instances, it is clearly established that:

> "[A] stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion 'appear[s] to have substantial grounds' or, stated another way, 'do[es] not appear to be without foundation in law.' " In re Currency Conversion Fee Antitrust Litigation, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002) (quoting Chrysler Capital Corp. v. Century Power Corp., 137 F.R.D. 209, 209-10 (S.D.N.Y.1991)) ( citing Flores v. Southern Peru Copper Corp., 203 F.R.D. 92, 2001 WL 396422, at *2 (S.D.N.Y. Apr. 19, 2001);

Anti-Monopoly, Inc. v. Hasbro, Inc., 1996 WL 101277, at *2 (S.D.N.Y. March 7, 1996)).
Johnson v. New York Univ. School of Educ., 205 F.R.D. 433, 434 (S.D.N.Y. 2002).

## V. Discussion

Guided by these legal tenets we conclude that further discovery should be briefly stayed at this time until after the court resolves the pending summary judgment motions. I note it may well be that all discovery issues have been resolved to the satisfaction of the parties. I reach this conclusion in accordance with settled case law, finding that: "[A] stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion 'appear[s] to have substantial grounds' or, stated another way, 'do[es] not appear to be without foundation in law.'" Johnson v. New York Univ. School of Educ., 205 F.R.D. 433, 434 (S.D.N.Y. 2002). Following the decision on the motions for summary judgment an additional discovery conference will be held (if necessary) to resolve any remaining discovery disputes before returning the case to the District Court for trial.

An appropriate order will follow.

Date: February 26, 2018                                BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge